UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO M. WALL,

        Plaintiff,                  Case No. 1:08-cv-1089

v.                                         HON. JANET T. NEFF

SHARON SMITH,

        Defendant.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff Angelo M. Wall presently is on parole. He sues Defendant Sharon Smith, who was his parole agent at "LCRPP," the Lake County Residential Re-Entry Program, in Baldwin, Michigan.[1] Plaintiff alleges that Smith unilaterally determined that, after his then-upcoming release from LCRRP, Plaintiff would reside at the Detroit Rescue Mission, as opposed to the Oasis Shelter in Highland Park, Michigan, upon which they had previously agreed. Plaintiff alleges that he was denied due process when Smith changed his authorized residence without first discussing it with him.

In addition, Plaintiff alleges that he has had a long-standing feud with gang members at the Detroit Rescue Mission and in the downtown Detroit area. He claims that he was severely beaten by several of these gang members in the summer of 2008, and Defendant Smith witnessed his injuries when she served him with parole violation charges. Plaintiff alleges that Defendant has subjected him to cruel and unusual punishment, apparently by determining that he would reside at the Detroit Rescue Mission after his release. From the complaint, it appears that Plaintiff no longer resides at the Detroit Rescue Mission.

Plaintiff sues Defendant in her personal and official capacities and seeks compensatory and punitive damages.

---

[1] The Lake County Residential Re-Entry Program is a facility that houses up to 240 male offenders and 60 female offenders that have been or are in the process of being released to the community. The facility falls under the jurisdiction of the Office of Parole and Probation Services within the Field Operations Administration of the Michigan Department of Corrections (MDOC). Offenders are placed at LCRRP for a period of 90 to 120 days as a condition of their parole. *See* MDOC website description, http://michigan.gov/corrections/0607,7-119-1435-186916--,00.html.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Due Process

Plaintiff complains that Defendant changed his parole housing placement without discussion with him and without due process of law. Although Plaintiff is not incarcerated at this time, his complaint alleges that he was in MDOC custody while at LCRRP and he continues to be under the control of the MDOC parole office following his release from LCRRP. Plaintiff therefore was a prisoner at the time of the alleged due process violation.

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466, (1983). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the

protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Plaintiff has no constitutional right to any particular parole housing placement. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ." *Olim*, 461 U.S. at 245; *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Further, the Sixth Circuit has held that "the denial of participation in a community placement program is not the type of atypical and significant deprivation in which the state might create a liberty interest." *Davis v. Loucks*, No. 96-1583, 1997 WL 215517, at *1 (6th Cir. Apr. 29, 1997) (citing *Sandin*, 515 U.S. at 483-84)). Similarly, a determination that a prisoner will reside in a particular facility while on parole is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin*, 515 U.S. at 485-86; *Rimmer-Bey*, 62 F.3d at 790-91; *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Plaintiff's claim arguably may be construed as a claim that he is entitled to a hearing before being given particular parole conditions. To the extent that Plaintiff bases his claim on state law, Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that he suggests that he has a liberty interest in his parole conditions, his claim is without merit.

Plaintiff's claim that he has a liberty interest in where he is housed on parole is essentially a claim that he has a liberty interest in the particulars of his parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). The Sixth Circuit repeatedly has recognized that Michigan has not created a liberty interest in parole. *See Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc); *see also Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001). Because Petitioner has no liberty interest in his parole, he has no such interest in any particular condition of that parole.

For all these reasons, Plaintiff has no liberty interest in his placement after release from LCRRP. In the absence of a recognized liberty interest, placing Plaintiff in a particular residential facility raises no issue of constitutional magnitude. Consequently, Plaintiff fails to state a due process claim.

### B. Eighth Amendment

Plaintiff claims that Defendant subjected him to cruel and unusual punishment by determining that he would initially reside at the Detroit Rescue Mission after he was released on parole. Plaintiff's complaint alleges that Defendant was his parole agent while he was housed at

LCRRP.  Although the allegations of the complaint are not entirely clear, it appears that the assault on Plaintiff occurred only after he was released from LCRRP.

Assuming that the Eighth Amendment applies to an initial parole residence determination,[2] Plaintiff fails to state a claim.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates."  *Farmer*

---

[2]Because it prohibits cruel and unusual *punishments*, the Eighth Amendment applies only to persons incarcerated after conviction.  *See Peete v. Metro. Gov't of Nashville & Davidson Cty.*, 486 F.3d 217, 221 (6th Cir. 2007) (Eighth Amendment standard does not apply to person who is not incarcerated).  Arguably, however, a prisoner on parole who is required by the state to reside at a particular facility remains sufficiently in custody and his custodial arrangements continue to be governed by the Eighth Amendment.  *See Little v. Wylie*, No. 99-5545, 2000 WL 178406, at **2-3 (6th Cir. Feb. 8, 2000) (applying Eighth Amendment to convicted person on probation who complained of conditions imposed as part of the community service portion of her probation).

*v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that a another person would cause a prisoner serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76, 79 (6th Cir.1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

The "deliberate indifference" standard contains both an objective and a subjective component. *Farmer,* 511 U.S. at 834. *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). To satisfy the objective component, the plaintiff must allege that the risk to the prisoner is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind . . . ." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly).

Plaintiff has failed to allege facts demonstrating that Defendant acted with deliberate indifference when she determined that he should be placed at the Detroit Rescue Mission, a temporary housing shelter, as his initial parole residence. The timeline of Plaintiff's allegations

suggests that the beating he received occurred only after he had been released from LCRRP. Even if Plaintiff advised Defendant that he had a dispute with a gang and that certain gang members had at times been housed at the shelter, the temporary nature of the housing could not serve to place Defendant on notice that Plaintiff was at substantial risk of serious harm if he resided at the facility. Further, Plaintiff's allegations do not demonstrate that Defendant possessed the necessary subjective intent. At best, Plaintiff has alleged that, in placing Plaintiff at the Detroit Rescue Mission, Defendant was negligent, resulting in Plaintiff being beaten.

Assuming that Plaintiff intended to allege that he was beaten in Detroit before he was returned to LCRRP and before he was placed at the Detroit Rescue Mission, Defendant nevertheless would not have possessed sufficient notice that any gang member would be housed at the shelter some months later. Nor could Defendant have known that the risk to Plaintiff extended beyond the specific individuals involved in the August 2008 incident, whom Defendant would have no way of knowing would receive shelter at the Detroit Rescue Mission while Plaintiff resided there.

In sum, Plaintiff's allegations fall short of demonstrating either prong of the deliberate-indifference standard. Accordingly, he has failed to state an actionable Eighth Amendment claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  December 3, 2008              /s/ Janet T. Neff
                                      JANET T. NEFF
                                      United States District Judge